JOE JOHNSON CO., Petitioner
(Petitioner/Contestant),

v.

WYOMING STATE BOARD OF
CONTROL, Respondent
(Respondent),

and

S.Y. Ranches, Inc., Respondent
(Respondent/Contestee).

JOE JOHNSON CO., Petitioner
(Petitioner/Contestant),

v.

WYOMING STATE BOARD OF
CONTROL, Respondent
(Respondent).

Nos. 92–187, 92–188.

Supreme Court of Wyoming.

July 23, 1993.

Rex E. Johnson, Wheatland, for Joe Johnson Co., petitioner.

Frederick E. Chemay, Asst. Atty. Gen., for Wyoming State Bd. of Control, respondent.

Frank J. Jones, Wheatland, for S.Y. Ranches, Inc., respondent.

Before MACY, C.J., and THOMAS, CARDINE, and GOLDEN, JJ. and BROWN, Ret. J.

BROWN, Justice (Retired).

Petitioner Joe Johnson Co. seeks review of two orders of the State Board of Control (Board) denying its petitions for declaration of abandonment of certain ground water rights attaching to lands owned by respondent S.Y. Ranches, Inc., and other parties who did not appear to contest the matter. We affirm.

Johnson presented the following issues for review:[1]

1. Does Johnson have standing to seek a declaration of abandonment of the ground water wells set forth in the two Petitions for Abandonment which it filed?

2. Did the State Board of Control, hereinafter referred to as "Board", err in finding that Johnson did not have standing to seek a declaration of abandonment?

3. Is the Board's decision supported by substantial evidence?

Johnson has a ground water right with an appropriation priority date of March 27, 1989. This appropriation, known as the Eydie Lee Johnson No. 2 well, is relied on by petitioner to establish standing for its two petitions, identified in this court as No. 92-187 and No. 92-188.

The water rights sought to be abandoned in Docket No. 92-187 are two appropriations owned by S.Y. Ranches, Inc. These wells are commonly known as the "Bowen Wells." These wells are north of the North Laramie River.

The petition in Docket No. 92-188 involved three appropriations owned by the Farmers' Home Administration (FHA), United States of America. The United States declined to appear at the hearing in opposition to the petition. These wells are referred to as the "G.E. Wells."

It is undisputed that all the wells involved in these petitions draw from the same aquifer (the Arikaree formation, also know as the "Red aquifer") for their source of water, and that the Eydie Lee Johnson No. 2 Well was junior in priority to each of the appropriations sought to be abandoned.

In support of its petitions for declaration of abandonment, Joe Johnson Co. offered the testimony of Joe Johnson, Sr., President of Joe Johnson Co. Regarding potential benefit or injury, Mr. Johnson's testimony consisted of the assertion that Joe Johnson Co. stood to benefit by the aban-

[1]. The issues set out by the Board are:

I. Whether the improvement of relative priority, through the elimination of a senior ground water appropriation, by itself, is insufficient to provide the benefit needed to establish standing to seek a declaration of abandonment of a ground water right pursuant to Wyo.Stat. § 41-3-401 (Supp.1992).

II. Whether substantial evidence in the record supports the Board of Control's conclusion that petitioner/contestant Joe Johnson Co. failed to carry its burden of proving that it met the injury/benefit requirement of the abandonment statute and that it therefore has no standing to seek a declaration of abandonment of the water rights which are the subject of its petitions, pursuant to Wyo.Stat. § 41-3-401 (Supp.1992).

The issue set out by respondent S.Y. Ranches, Inc., is:

Does Johnson have standing to seek a declaration of abandonment of the ground water wells set forth in the two Petitions for Abandonment which it filed?

donment of the appropriations in question because there would be fewer senior appropriators ahead of Joe Johnson Co. drawing from the aquifer. Mr. Johnson testified that no studies were performed with regard to injury, and he offered no specific testimony as to whether Joe Johnson Co. was then using ground water which would be withdrawn to the company's detriment by the five wells subject to the petitions if they were reactivated. Also, no testimony was offered to show whether, or in what amounts, the reactivation of the five wells might affect the Eydie Lee Johnson No. 2 Well.

Johnson also offered documentary evidence in support of its petitions through its request that the Board take administrative notice of several orders of the State Engineer and the Board of Control, along with the record of proceedings supporting each order. The Board granted that request and considered those materials. These records are from three separate proceedings which were held before the State Engineer and the Board of Control in the late 1970's and early 1980's. These proceedings were: (1) Johnson application; (2) Basin Electric Power petitions for a change in use from irrigation to industrial; and (3) the creation of the Platte County control area.

## I.

The Board concluded that the enhancement of a petitioner's relative priority without a showing of potential tangible benefit or injury was insufficient to sustain the petitioner's standing to seek the abandonment of the water rights at issue. The Board found that Johnson failed to produce any direct evidence regarding the potential effect of reactivating the Bowen wells and the G.E. wells.

The Board also concluded that the additional evidence it noticed did not support Johnson's standing and found that the evidence contained no specific analysis of the wells involved. The Board also found that the wells studied or involved in the Johnson application were not sufficiently similar to the wells involved in this case to support the conclusion that the results of those

studies were applicable in this case. The Board found that the record of the Basin Electric applications contained no evidence pertaining to ground water effect resulting from the operation of any wells. Finally, the Board found that the record of the creation of the Platte County Control Area contained no evidence as to specific well-to-well interactions.

We defer to the Board's specialized knowledge and expertise regarding the use and nonuse of water and the technicalities involved in irrigation. *Kearney Lake, Land & Reservoir Co. v. Lake DeSmet Reservoir Co.*, 475 P.2d 548, 549 (Wyo. 1970); *Wheatland Irrigation District v. Pioneer Canal Co.*, 464 P.2d 533, 543 (Wyo.1970); *Laramie Rivers Co. v. Le Vasseur*, 65 Wyo. 414, 202 P.2d 680, 694–95 (1949). Such deference is particularly appropriate when the Board's actions, as in this case, involve an area of such technical complexity as ground water. When deferring to an agency's experience and expertise, we will not disturb the agency's decision except "where it is clearly contrary to the overwhelming weight of the evidence on the record." *Vandehei Developers v. Public Service Commission of Wyoming*, 790 P.2d 1282, 1287 (Wyo.1990).

Other standards of reviewing agency action which may have some peripheral application here are:

Substantial evidence is defined by this court as "relevant evidence which a reasonable mind might accept in support of the conclusions of the agency." The substantial evidence standard also requires that there be more than a scintilla of evidence. It is not required that the proof attain such a degree of certainty as to support only one conclusion to the exclusion of all others. Once the measure of evidence has surpassed the scintilla threshold, the possibility of drawing two inconsistent conclusions from the entire record does not mean that the conclusion drawn by the administrative agency is not supported by substantial evidence. Even where this court, after reviewing the record, arrives at a differ-

ent conclusion, the court cannot substitute its judgment for that of the agency's as long as the agency's conclusion is supported by substantial evidence.

*Department of Employment, Labor Standards Div. v. Roberts Construction Co.,* 841 P.2d 854, 857 (Wyo.1992) (citations omitted).

It is not disputed that the circumstances here are covered by the basic abandonment of water rights statutes, Wyo.Stat. § 41–3–401 (Supp.1992).[2] The controlling portion of the statute, however, is Wyo.Stat. § 41–3–401(b), which provides in part:

> When any water user who might be benefitted by a declaration of abandonment of existing water rights or who might be injured by the reactivation of the water right, desires to bring about a legal declaration of abandonment, he shall present his case in writing to the state board of control. * * * The following persons have standing to petition the state board of control to declare the abandonment of existing water rights under this section:
>
> (i) Any person who has a valid adjudicated water right or is the holder of a valid permit from the same source of supply which is equal to or junior in date of priority to the right for which abandonment is sought; or
>
> (ii) The holder of a valid water right entitled to surplus water under W.S. 41–4–318 through 41–4–324, petitioning to abandon a water right from the same source of supply if the right sought to be abandoned has a priority date of March 1, 1945, or earlier.

■ In an effort to reconcile what we have said in prior cases with the circumstances of this case, petitioner at oral argument advanced a rather novel notion regarding the construction of Wyo.Stat. § 41–3–401(b). Petitioner argued that this section provided for two classes of persons or entities that could seek abandonment under the statute. According to petitioner, one class was provided for in the first sentence of Wyo.Stat. 41–3–401(b), that is, those who might be benefitted by a declaration of abandonment or who might be injured by reactivation of the water right. The other class of persons or entities who could seek abandonment according to petitioner were those who possess a valid water right of *equal or junior status* to the water right sought to be abandoned and that the water right relied upon by the petitioner and the water right for which a declaration of abandonment is sought are from the *same source of supply.*

■ Petitioner in the case before us has standing to pursue an abandonment petition by virtue of Wyo.Stat. § 41–3–401(b)(i). However, it must additionally show a benefit or injury according to the statute.[3]

■ It is an elementary rule of statutory construction that statutes must be construed so that no part is rendered inoperative or superfluous. *State ex. rel. Wyoming Worker's Comp. Div. v. Mahoney,* 798 P.2d 836, 838 (Wyo.1990). Accordingly, we read Wyo.Stat. § 41–3–401(b), as amended, to confer standing to petition for abandonment upon a water user who alleges and proves two essential facts: (1) that he possesses a valid water right of *equal or junior status* to the water right sought to be abandoned; and (2) that the water relied upon by the petitioner and the water right for which a declaration of abandonment is sought are from the *same source of supply.* A showing of the two essential facts indicated above are sufficient to establish

**2.** Wyo.Stat. § 41–3–401(a) provides in part:

> Where the holder of an appropriation of water from a surface, underground or reservoir water source fails, either intentionally or unintentionally, to use the water therefrom for the beneficial purposes for which it was appropriated, whether under an adjudicated or unadjudicated right, during any five (5) successive years, he is considered as having abandoned the water right and shall forfeit all

water rights and privileges appurtenant thereto.

**3.** The State Board of Control heard the merits of petitioner's petition, then determined that petitioner did not have standing to petition the Board. The Board was justified in its concept of standing because of what we have said in other cases regarding standing. Even though the Board was confused about standing, it reached the correct result.

standing to present an abandonment petition to the Board of Control. However, in order to prevail on the petition, it must be shown that petitioner stands to benefit from a declaration of abandonment or to sustain injury by reactivation of the contested water right.

Petitioner does not seriously contend that it demonstrated a tangible benefit or injury; rather, petitioner's principal argument is that with regard to ground water, benefit or injury is virtually impossible to prove and that special rules of statutory construction should accommodate this circumstance. The Board concedes that the proof of benefit or injury is more difficult with respect to ground water.[4]

The petitioner's position as stated in its brief is:

[T]he statutory language "might be benefitted or injured" would be fully satisfied by the improvement of its priority within the water source. * * *

* * * The statute does not limit the "might be benefitted" requirement to a simple increase in water availability. An appropriator "might" be benefitted if there were fewer individuals who had standing to object to a change of use or a change of location.

There is nothing in the abandonment statutes to support petitioner's argument. The first sentence in Wyo.Stat. § 41–3–402(a) (Supp.1992) clearly says that the statutes apply to appropriations from the surface, underground or reservoir water sources. *See* fn. 2, *supra.*

■ Reduced to its simplest terms, the question for our resolution is: "Is relative improvement in priority sufficient to establish benefit or injury for purposes of abandonment under the statute (Wyo.Stat. § 41–3–401)?" We determine that improvement of priority is not sufficient.

We have never specifically addressed the relative improvement of priority argument before. However, we believe that prior cases support our determination here. In *Schulthess v. Carollo*, 832 P.2d 552, 559 (Wyo.1992), we said:

[T]his court, and others, has repeatedly interpreted Wyoming's abandonment statutes to require that a petitioner have a "tangible" as opposed to a "theoretical" interest at stake to establish standing. *See, e.g., Hagie v. Lincoln Land Co.*, 18 F.Supp. 637, 639 (D.Wyo.1937) * * *; *Laramie Rivers Co. v. Wheatland Irr. Dist.*, 708 P.2d 20, 30 (Wyo. 1985) * * *; *Horse Creek Conservation Dist. v. Lincoln Land Co.*, 54 Wyo. 320, 342, 92 P.2d 572, 580 (1939) (door is not open for just anybody to initiate abandonment proceedings). Under Wyoming's present abandonment statute, the "tangible interest at stake" requirement necessitates that Carollo allege and prove a reasonable likelihood that the abandonment of Schulthess' water rights will either benefit or injure his surplus water right. *See* Wyo.Stat. § 41–3–401(b).

In a long line of cases, we have repeatedly held that the petitioner must show he had a water right that would be affected in some discernible manner by the declaration of abandonment. *Laramie Rivers Co. v. Wheatland Irrig. Dist.*, 708 P.2d 20 (Wyo. 1985); *State Board of Land Commissioners v. Lonesome Fox Corp.*, 707 P.2d 167 (Wyo.1985); *Platte County Grazing Ass'n v. State Board of Control*, 675 P.2d 1279 (Wyo.1984); *Cremer v. State Board of Control*, 675 P.2d 250 (Wyo.1984); *Michell Irrig. Dist. v. Whiting*, 59 Wyo. 52, 136 P.2d 502 (1943); *Horse Creek Conservation Dist. v. Lincoln Land Co.*, 54 Wyo. 320, 92 P.2d 572 (1939). *See also Hagie v. Lincoln Land Co.*, 18 F.Supp. 637 (D.Wyo. 1937). The foregoing cases suggest that the petitioner can show benefit sufficient to establish standing if it can show that the exercise of its water right might be facilitated by the abandonment, or changed to its advantage, in the sense that it would be

---

**4.** The Board, in its brief, favors us with a lengthy scientific discussion regarding the reasons why demonstrating a benefit or injury is difficult regarding ground water as opposed to surface water. The Board indicates, however, that scientific methods do exist to predict , ground water movements.

enabled to make use of water that would not otherwise be available if there is no abandonment. Petitioner points out that the cases cited immediately above were decided under the law as it existed before the effective date of the amendment of Wyo. Stat. § 41–3–401(b). Wyo.Stat. § 41–3–401(b) [5] was amended as follows: Subsection (b), first sentence, substituted "benefitted" for "affected" and inserted "or who might be injured by the reactivation of the water right"; third sentence added "for public hearing" to the end of the sentence; penultimate sentence added "under this section" to the end of the sentence; and added the last sentence, including subsections (i) and (ii). Petitioner reads more into the amendment than is justified. We see nothing in the amendment that relieves a petitioner of showing a benefit or injury that was consistently required in the abandonment cases that we have cited.

Under petitioner's theory, a junior appropriator of water from the North Platte River in Saratoga could seek abandonment of a senior appropriator in Torrington. In this scenario, the junior appropriator would be able to eliminate a senior appropriator and thus theoretically improve his priority within the water source (North Platte River). We determine that improvement of

priority is too speculative, uncertain and tenuous to demonstrate a benefit.

In summary, we hold that petitioner had standing to present a petition for abandonment to the Board of Control; however, it failed on the merits to show it stands either to benefit from a declaration of abandonment or to sustain an injury by reactivation of the contested water right. Furthermore, we hold that a relative improvement in priority, standing alone, is not sufficient to show a benefit.

## II.

Petitioner raises a substantial evidence issue. In its brief and at oral argument, appellant said very little, if anything, about its sufficiency of evidence issue. We would be justified in giving this issue a short shrift because of lack of authorities and cogent argument. *Matter of Adoption of BBC*, 831 P.2d 197, 202 (Wyo.1992). In any case, this appears to be a catch-all or throw-away issue.

In *Mountain Fuel Supply Company v. Public Service Commission of Wyoming*, 662 P.2d 878 (Wyo.1983), we held that the burden of proving a lack of substantial evidence is upon the party appealing the

---

5. Wyo.Stat. § 41–3–401(b) (Supp.1992) (emphasis added) (after amendment) states:

When any water user who might be *benefitted* by a declaration of abandonment of existing water right *or who might be injured by the reactivation of the water right*, desires to bring about a legal declaration of abandonment, he shall present his case in writing to the state board of control. The board has exclusive original jurisdiction in water right abandonment proceedings. The board shall, if the facts so justify, refer the matter to the superintendent of the water division where the abandonment is claimed to have occurred *for public hearing*. The total absence of water to divert during an irrigation season precludes the inclusion of any such period of nonuse resulting therefrom in the computation of the successive five (5) year period *under this section. The following persons have standing to petition the state board of control to declare the abandonment of existing water rights under this section:*

*(i) Any person who has a valid adjudicated water right or is the holder of a valid permit from the same source of supply*

*which is equal to or junior in date of priority to the right for which abandonment is sought; or*

*(ii) The holder of a valid water right entitled to surplus water under W.S. 41–4–318 through 41–4–324, petitioning to abandon a water right from the same source of supply if the right sought to be abandoned has a priority date of March 1, 1945, or earlier.* [Effective May 23, 1985]

Wyo.Stat. § 41–3–401(b) (1977) (emphasis added) (before amendment) stated:

When any water user who might be *affected* by a declaration of abandonment of existing water rights, desires to bring about a legal declaration of abandonment, he shall present his case in writing to the state board of control. The board has exclusive original jurisdiction in water right abandonment proceedings. The board shall, if the facts so justify, refer the matter to the superintendent of the water division where the abandonment is claimed to have occurred. The total absence of water to divert during an irrigation season precludes the inclusion of any such period of nonuse resulting therefrom in the computation of the successive five (5) year period.

agency's determination. This issue, as phrased by petitioner, suggests that the burden be turned around and that it is the Board's burden to produce evidence that the petitioner did not produce sufficient evidence.

The Board pointed out and demonstrated the deficiencies in petitioner's proofs and brought to our attention law that supported its determination. We do not know what negative evidence the Board could have produced to show that petitioner did not meet its burden. In this case, there is very little, if any, conflicting evidence. There may be a difference of opinion regarding legitimate inference that could be drawn from the evidence; however, different inferences that may be drawn from the same facts do not render the determination of the Board flawed. *Department of Employment, Labor Standards Div. v. Roberts Construction, Co.,* 841 P.2d 854.

Petitioner has failed in its burden of proof on the sufficiency of evidence issue as well as the principal issue.

Affirmed.

THOMAS, Justice, concurring specially.

I am satisfied that in this instance, in both proceedings, the State Board of Control held a full statutory hearing and ruled there was insufficient evidence of potential benefit or injury, thus disposing of the abandonment proceedings on the merits. I am in complete agreement with the opinion of the court, and I concur in it.

My examination of the pertinent statutes persuades me there is a legislative policy foreclosing unlimited retention of unused water rights. Such rights are considered to be abandoned, and the holder forfeits "all water rights and privileges appurtenant thereto." WYO.STAT. § 41-3-401(a) (Supp.1992) provides, in pertinent part:

Where the holder of an appropriation of water from a surface, underground or reservoir water source fails, either intentionally or unintentionally, to use the water therefrom for the beneficial purposes for which it was appropriated, whether under an adjudicated or unadjudicated

right, during any five (5) successive years, he is considered as having abandoned the water right and shall forfeit all water rights and privileges appurtenant thereto.

WYO.STAT. § 41-3-402(a) (Supp.1992) then provides, in pertinent part:

When any appropriator has failed, intentionally or unintentionally, to use any portion of surface, underground or reservoir water appropriated by him, whether under an adjudicated or unadjudicated right, for a period of five (5) successive years, the state engineer may initiate forfeiture proceedings against the appropriator with the state board of control, to determine the validity of the unused right.

While another water user may have difficulty in establishing benefit or injury with respect to an unused water right, the state engineer does not have to meet that burden, and the right may be forfeited as a matter of appropriate management and regulation. Such efforts would be appropriate to meet the policy concerns expressed in the dissenting opinion. While traditionally the state has relied upon adversary proceedings between users of water to address abandonment, in view of the burden imposed upon a junior appropriator that this case recognizes, the state engineer may be obliged to pursue the statutory forfeiture proceedings.

CARDINE, Justice, dissenting.

I concur in the opinion of the court now holding that appellant had standing to present his case in writing to the State Board of Control but dissent from the opinion of the court affirming the decision of the Board of Control which was not on the merits of the case.

The essential task presented in this case was a determination of legislative intent in amending W.S. 41-3-401(b) (Cum.Supp. 1992) in the following manner:

When any water user who might be *benefitted* by a declaration of abandonment of existing water rights *or who might be injured by the reactivation of the water right,* desires to bring about a

legal declaration of abandonment, he shall present his case in writing to the state board of control. The board has exclusive original jurisdiction in water right abandonment proceedings. The board shall, if the facts so justify, refer the matter to the superintendent of the water division where the abandonment is claimed to have occurred *for public hearing.* The total absence of water to divert during an irrigation season precludes the inclusion of any such period of nonuse resulting therefrom in the computation of the successive five (5) year period *under this section. The following persons have standing to petition the state board of control to declare the abandonment of existing water rights under this section.*

*(i) Any person who has a valid adjudicated water right or is the holder of a valid permit from the same source of supply which is equal to or junior in date of priority to the right for which abandonment is sought; or*

*(ii) The holder of a valid water right entitled to surplus water under W.S. 41–4–318 through 41–4–324, petitioning to abandon a water right from the same source of supply if the right sought to be abandoned has a priority date of March 1, 1945, or earlier.* [emphasis added]

The legislature must have intended some change in prior law, both statutory and case law, by the amendment. The intent, after amendment of W.S. 41–3–401(b), seems clearly to be that one

(a) who has a valid, adjudicated water right

(b) from the same source of supply, and

(c) which is equal to or junior in date of priority

has standing.

*The issue of standing is the only issue presented* to us by appellant for determination. That is because the Board ruled against appellant upon the Board finding that appellant had no standing to bring his case. My preference would be that, having held that appellant had standing to present his case to the Board, that this case be remanded and appellant be allowed to present such evidence or additional evidence to establish that he might be benefitted by the abandonment and that the Board's decision on that question then be on the merits.

I have some difficulty that our state of law is such that a holder of a water right might retain that right forever without ever having to use it.[1] That can occur unless a holder of a junior water right can show benefit by abandonment or detriment. It is said our present state of law avoids disputes over water among neighbors. I question that policy statement. Disputes over water among neighbors are legion, never ending, intense, sometimes violent. Perhaps a bright line, clear "use the water or lose it" policy would lessen the struggle over precious water. At least all would understand clearly what is necessary to retain a water right. The present state of law does little more than protect vested interests that tie up water rights without using them, water rights that might go otherwise to beneficial use. If a holder of a water right does not use it for five years when water is available, that water right apparently is not needed. What good reason is there for denying abandonment? I can think of none. Our policy should be "use it or lose it."

This case involves underground water. The wells in question have not been pumped for more than five years. That is admitted. In some cases the pumping equipment and sprinklers have been removed from the wells and the land. If these wells were abandoned, some other

---

1. I recognize that W.S. 41–3–402(a) (Cum.Supp. 1992) allows the state engineer to seek abandonment of water rights if he chooses to do so. But, being practical, I know that he is not going to run around the state abandoning unused water rights. First, he has more pressing, current business; and, secondly, if the unused water rights are not a current problem, why bother? So, why not allow a party, with standing, who has an interest, to do what the state engineer can do—seek abandonment of unused water rights—and at no cost to the State? This is not a novel idea. I recommend it to the legislature. The practical effect of the present state of law is that old, unused water rights will continue to exist forever.

landowner might seek a well permit for water that could be put to beneficial use. Surely that policy better serves our state, its citizens and our need to put water to beneficial use. With old well water rights existing in perpetuity, ready to be reactivated at any time, interest in other development is lost.

Finally, I recognize that when this appellant who has standing presents his case to the Board, it may, under the present state of law, find that he might not be benefitted by abandonment or be injured by reactivation of the water right and decide the case against appellant. While my preference is that abandonment results from nonuse, I recognize that is not the present state of law when abandonment is sought by a junior appropriator.

Because I would remand this case to be decided on the merits, I dissent.